IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 22-cv-02467 -SKC

Letecia Stauch,

    Plaintiff,

v.

El Paso County,
L. Stengle,
R. Snipe,
Wellpath, and
Trinity Food
Service,

    Defendants.

---

**DEFENDANT EL PASO COUNTY, L. STENGLE AND R. SNIPE'S MOTION TO DISMISS PURSUANT TO F.R.C.P. 8(a), 12(b)(1) and (6)**

---

Defendants, El Paso County, L. Stengle and R. Snipe ("County Defendants"), by and through the Office of the County Attorney of El Paso County, Colorado and pursuant to F.R.C.P. 8(a), 12(b)(1) and (6), move to dismiss all claims filed by Plaintiff as follows:

                  I.      **CERTIFICATION**

**D. C. COLO.L.Civ.R. 7.1(b)(1) CERTIFICATION:** The duty to confer is exempted because Plaintiff Letecia Stauch ("Plaintiff") is a *pro se* prisoner.

                  II.      **PROCEDURAL BACKGROUND AND FACTS PLED**

This matter arises out of a Complaint filed by Plaintiff Letecia Stauch on September 22, 2022, for alleged events that occurred while he was incarcerated as a pre-trial detainee at the El Paso County Criminal Justice Center (CJC) starting on March 5, 2020.

A. Plaintiff alleges that from July 2021 through February 2022, her 1st Amendment rights were violated by means of her kosher diet. (PC, p. 8 ¶ 1.)

B. August 8, 2021 – Plaintiff sends a kite to Trinity Food services explaining the contamination and kosher items on open trays. (PC, p. 8 ¶ 17.)

C. September 4, 2021 – Plaintiff reports improper kosher and contaminations through the El Paso County Jail grievance process and was told to contact Trinity Food Services instead. (PC, p. 8 ¶ 19.)

D. November 19, 2021 – Plaintiff sent kite explaining that staff was using a pen/marker to write "K" on non-kosher items that did not already have the standard approval. (PC, p. 8 ¶ 22.)

E. September 2021, November 2021 and February 2022 – Plaintiff states that she advised the deputies during court transport that they were not providing kosher meals while at court and eating the sack lunches were a violation of the signed kosher policy. (PC, p. 9 ¶ 6.)

F. February 12, 2022, Plaintiff states that Defendant L. Stengle sent in a violation of kosher to religious programs and her kosher meals were terminated. (PC, p. 8 ¶ 15.)

G. Plaintiff states from February 14, 2022 through February 28, 2022, she sent several kites and asked SSGT's if they could provide the proof and reason behind the suspension of the kosher meals.

H. Plaintiff states that Defendant L. Stengle advised Plaintiff that she observed her violating the kosher diet by eating other foods but states the foods in question were purchased items on commissary and were not excluded. (PC, p. 8 ¶ 24.)

I. Plaintiff states that from February 14, 2022 through August 14, 2022 while her kosher diet was suspended she experienced weight loss, depression and being limited to one meal per day due to the costs of commissary, and burdens on her religious practices. (PC, p. 10 ¶ 8.)

J. August 17, 2022 – Plaintiff states she expressed the alleged violations to Defendant R. Snipe, stating that the meal for lunch and dinner were not approved items and were processed with other foods causing contamination. Plaintiff states that Defendant R. Snipe advised that her meal was correct. (PC, p. 10 ¶ 18.)

K. August 15, 2022 – Plaintiff alleges non-kosher items (PC, p. 11 ¶ 17.)

1

L. August 16, 2022 – Plaintiff claims no proteins for kosher meals, extremely low calorie (PC, p. 11 ¶ 18.)

M. August 17, 2022 – Plaintiff claims non kosher lunch and dinner (PC, p. 11 ¶ 19.)

N. August 18, 2022 - Plaintiff claims she was served "smeat" (processed meat) with non-kosher items in a "plant around pork." Alleges that she advised an SSGT who entered the A3 female ward. (PC, p. 11 ¶ 20.)

O. August 19, 2022 – Plaintiff claims meal were 'still incorrect.' (PC, p. 12 ¶ 11.)

P. Plaintiff alleges that El Paso County for El Paso County Jail failed to supervise and train staff properly to bring kitchen and workers in compliance with kosher policy; 'uniform fashion'; promulgated, created, implemented or possessed responsibility for the continued constitutional injury to disregard 1st and 14th Amendments, and lastly alleges an abuse of discretion. Plaintiff states that El Paso County was also aware that contractor WellPath's action violated her 8th Amendment rights and they possessed the responsibility for the continued operation and risk of harm. (PC, p. 19 ¶ 4.)

Q. Plaintiff alleges that Defendant L. Stengle prohibited her ability to practice religion in accordance with those religious customs and states she continued to report frivolous claims with merit. Plaintiff claims Defendant L. Stengle used false reputation evidence to punish Plaintiff and violate her 1st Amendment. (PC, p. 19 ¶ 13.)

R. Plaintiff alleges that Defendant R. Snipe participated in the violation of her 1st Amendment rights by suggesting that it was a deserved punishment and did not fix the diet. (PC, p. 19 ¶ 23.)

S. Plaintiff alleges that Trinity Food Services had a disregard to inmates health and risk of substantial burden placed by religious diet violations, failed to supervise kitchen staff and outside employees on how to properly prepare a kosher diet and states they are ware their actions violate her rights. (PC, p. 20 ¶ 22.)

### III.     STANDARD OF REVIEW

The purpose of a motion to dismiss under Fed. R. Civ. P. 12(b)(6) is to challenge the sufficiency of the complaint. *Sutton v. Utah State Sch. For the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 2008). To

survive a motion to dismiss, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

"A complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 557)*. Plausibility, in the context of a motion to dismiss, means that the plaintiff pled facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Determining plausibility requires a two-prong analysis. First, a court must identify "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Id.* at 680. Second, the Court must consider the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681.

Plausibility refers "'to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (quoting *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008)). "The nature and specificity of the allegations required to state a plausible claim will vary based on context." *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011). Thus, while the Rule 12(b)(6) standard does not require that a plaintiff establish a prima facie case in a complaint, the elements of each alleged cause of action may help to determine whether the plaintiff has set forth a plausible claim. *Khalik*, 671 F.3d at 1192. However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. A complaint that contains only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic v. Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Nor will it do if it "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (2009) (quoting *Twombly*, 550 U.S. at 557). Thus, conclusory allegations are "not entitled to the assumption of truth" and are not considered. *Id.* at 679. Instead, a court looks to whether the complaint includes "enough factual matter (taken as true) to suggest that" the plaintiff is entitled to relief. *Twombly*, 550 U.S. at 556. "Determining whether a complaint states a plausible

claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has made an allegation, "but it has not shown that the pleader is entitled to relief." *Id.* (quotation marks and citation omitted).

## ARGUMENT

Plaintiff's claims against County Defendants are asserted in their official capacities only. Plaintiff's claims must fail for the following reasons: 1) Plaintiff fails to establish a constitutional violation; 2)Plaintiff has improperly named El Paso County in the complaint and has improperly identified El Paso County as a policy-maker for the El Paso County Jail (CJC); and 3) Plaintiff fails to state a claim for municipal liability.

**A. Allegations Do Not Support a Violation of Plaintiff's First Amendment Rights**

In order to state a claim that defendants violated her right to free exercise of religion, Plaintiff must adequately allege that the defendants "substantially burdened [her] sincerely-held religious beliefs." *Kay v. Bemis,* 500 F.3d 1214, 1218 (10th Cir.2007). Incidents of negligence and preparation of an inmate's religious diet are not enough to establish a 1st Amendment violation. See *Gallagher v. Shelton*, 587 F.3d 1063, 1070-71 (10th Cir. 2009)(failure to properly prepare an inmate's Kosher diet did not amount to violation of 1st Amendment).

This Court has previously ruled that municipal employees' denial of an inmate's grievances without further causal connection to the alleged constitutional violation were not sufficient to establish liability. *Gallagher*, 587 F.3d at 1069. Here, the only allegation against Deputy Stengle is that she reported Plaintiff's violation of the CJC religious diet agreement, which Plaintiff had acknowledged in writing. PC, p.9, ¶1. Plaintiff makes no other allegation that Deputy Stengle acted to deny Plaintiff access to a Kosher diet. Plaintiff's allegation against Deputy Snipe is even more tangential. Plaintiff makes a bare conclusory statement that Deputy Snipe did not report Plaintiff's complaint about the Kosher meals in CJC to Deputy Snipe's superiors. PC, p.10-11. It is not plausible that Plaintiff could have known whether Deputy Snipe did report Plaintiff's verbal complaint to Deputy Snipe's superiors. However, if that were the case, it would not amount to a violation of Plaintiff's 1st Amendment rights.

**B. El Paso County is Improperly Named in the Complaint**

Plaintiff asserts claims against both El Paso County and Deputies from the El Paso County Sheriff's Office (EPSO) in their official capacity. EPSO and El Paso County are, however, separate entities. See Bristol v. Bd. of Cnty. Comm'rs of Clear Creek, 312 F.3d 1213, 1219 (10th Cir. 2002).

Section 30-11-105 of the Colorado Revised Statutes provides "the exclusive method by which jurisdiction over a county can be obtained." See Calahan v. Jefferson Cnty., 429 P.2d 301, 302 (Colo. 1967) (stating that "the name in which the county shall sue or be sued shall be, 'The board of county commissioners of the county of .........'" (emphasis added)). The Complaint fails to properly name El Paso County as a party and this Court lacks jurisdiction over it as a result. (See Doc. 124, case caption.)

Even if the Court considers El Paso County properly named, the Complaint fails to state a plausible claim against it because EPSO, not El Paso County, is responsible for CJC's operations. See Colo. Rev. Stat. § 30-10-511. Plaintiff therefore cannot assert a claim against El Paso County unless she plausibly alleges that EPSO sets policy for El Paso County or that El Paso County sets policy for CJC's operations. See, e.g., Gonzales v. Martinez, 403 F.3d 1179, 1182 n.7 (10th Cir. 2005). Plaintiff makes no such allegations in the Complaint. Consequently, the claims asserted against El Paso County must be dismissed under Fed. R. Civ. P. 12(b)(1) and (6).

**C. Allegations in the Complaint Fail to Support a Claim of Municipal Liability**

Municipalities cannot be held liable for the unconstitutional actions of their employees under a theory of *respondeat superior*. *Brown*, 520 U.S. at 405 (1997). Municipalities may instead be liable under § 1983 when the execution of a policy or custom "inflicts the injury" upon the plaintiff. *Monell v. Dep't of Sec. Servs. of N.Y.*, 436 U.S. 658, 694 (1978). To state a cognizable *Monell* claim, a plaintiff must first establish an underlying constitutional violation and then show the existence of a municipal custom or policy and a direct causal link between the custom or policy and the violation alleged. *Myers v. Okla. Cnty. Bd. of Cnty. Commr's*, 151 F.3d 1313, 1316 (10th Cir. 1998). An official policy or custom may be proven by the existence of a formally promulgated policy; a well-settled custom or practice; a final decision by a municipal policymaker; failure to train or supervise; or ratification by the final policymaker of the decisions of

subordinates to whom authority was delegated subject to the policymaker's review and approval. *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1189 (10th Cir. 2010). To prevail on a failure to supervise claim under § 1983, Plaintiff must demonstrate an "affirmative link" between the supervisor-defendant and the constitutional violation—this requires more than the supervisor's "mere knowledge" of her employee's conduct. *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013) (citing *Iqbal,* 556 U.S. at 677). Accordingly, a Plaintiff must establish: (1) the defendant's personal involvement; (2) a causal connection; and (3) a culpable state of mind. *See Dodds v. Richardson*, 614 F.3d 1185, 1195 (10th Cir. 2010). Plaintiff must establish causation by showing that "the municipality was the 'moving force' behind the injury alleged.'" *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 770 (10th Cir. 2013) (citations omitted). "Where a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employees." *Brown*, 520 U.S. at 405.

Here, Plaintiff stated that she "asked deputies to alert their supervisors that the policy and custom by El Paso County Jail was not prohibited per the religious affiliation." PC p. 8, ¶1. It is unclear which deputies Plaintiff spoke to, but the Complaint read in its entirety indicates that Plaintiff did not address this concern to any of the named Defendants. The Plaintiff lists numerous communications to Trinity and communications to CJC staff, but does not cite any custom, policy, or practice on the part of the named Defendants that led to the alleged Constitutional deprivation. See PC p. 8, ¶2. Likewise, Plaintiff cites no other instances in which other inmates have been deprived of access to a Kosher diet. Without establishing a custom, policy, or practice promulgated or enforced by El Paso County, Stengle, or Snipe, Plaintiff has failed to support a claim under *Monell*.[1]

Plaintiff has also failed to establish a claim under a theory of failure to train or supervise. Plaintiff makes no allegations of direct involvement by Deputy Stengle and Deputy Snipe related to improper

---

[1] As stated previously, Plaintiff has also failed to establish *Monell* liability by establishing a Constitutional violation and has failed to properly identify El Paso County as either a direct participant or policy maker related to the alleged 1st Amendment violation.

preparation of Kosher meals or denying Plaintiff access to Kosher Meals. As stated above, Deputy Stengle's only mention in the complaint comes as a person who reported Plaintiff's violation of the religious diet policy in CJC. PC, p. 9, ¶1. Likewise, Deputy Snipe is also not mentioned as having any direct involvement in promulgation of a policy, or deprivation of Plaintiff's rights. There is no mention of either Deputy's state of mind amounting to culpability. Because Plaintiff has failed to satisfy the three prongs laid out in *Dodds*, Plaintiff cannot succeed under a theory of failure to supervise.

### D.  Substantial Deference Accorded to Prison Administrators

The Court "must accord substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them." *Perrian v. Coons*, No. 13-CV-02951-KLM, 2015 WL 1539022, at *4–5 (D. Colo. Mar. 31, 2015), citing *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003). Defendants note well-established law that prison management functions should be left to the broad discretion of prison administrators to enable them to manage prisons safely and effectively. *Perrian,* 2015 WL 1539022, at *4-5*, *see, e.g., Meachum v. Fano*, 427 U.S. 215 (1976). Accordingly, courts should interfere with the management of prisons only under exceptional and compelling circumstances. *Perrian,* 2015 WL 1539022, at *4-5*, citing *Taylor v. Freeman*, 34 F.3d 266, 268–70 (4th Cir. 1994). The Tenth Circuit "abhor[s] any situation or circumstance requiring the intervention of the federal courts in matters involving the administration, control and maintenance by the sovereign states of their penal systems. It is a delicate role assigned to the federal courts to display that restraint so necessary in the maintenance of proper federal-state relations." *Battle v. Anderson*, 564 F.2d 388, 392 (10th Cir. 1977) (internal quotation marks and citation omitted). As such, "sweeping intervention in the management of state prisons is rarely appropriate when exercising the equitable powers of the federal courts." *Perrian*, 2015 WL 1539022, at *5, citing, *Taylor*, 34 F.3d at 269 (citations omitted).

Here, CJC has established guidelines for providing access to a religious diet. Plaintiff acknowledged those guidelines via her signature. PC, p.8, ¶1. Guidelines such as this are necessary for the safe and orderly

function of the jail. Particularly, the right to a religious diet cannot be abused without forfeiture of access to the diet. If inmates were allowed to access religious diets only at their leisure, the jail would not be able to maintain orderly provision of food to all inmates. If other inmates learned that an individual were allowed to flout the policy without any consequence, there would be incentive for inmates to test which other policies could be disregarded. The Court should not engage in second-guessing the policies at CJC when they both support inmates' Constitutional rights and accomplish the important goal of maintaining order in the facility.

## V. CONCLUSION

Based upon the foregoing, County Defendants respectfully request the following:

1. The Governmental Entity Defendants and Defendants sued in their official capacity request this Court dismiss Plaintiff's Complaint against them, with prejudice pursuant to FED. R. CIV. P. 12(b)(6), as Plaintiff fails to state sufficient grounds for municipal liability under *Monell*.

Dated this 28th day of December 2022.

By: s/ *Chris Strider*
Chris Strider, #51124
Assistant County Attorney
El Paso County Attorney's Office
200 S. Cascade Ave.
Colorado Springs, CO 80903
(719) 520-6485 (Main Office Line)
(719) 520-7264 (Office)
(719) 627-1586 (Mobile)
Email: chrisstrider@elpasoco.com

*Attorney for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on December 28, 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system and mailed a copy to Plaintiff at the following address:[1]

Letecia Stauch, A#0342156
El Paso County Criminal Justice Center
2739 E. Las Vegas
Colorado Springs, CO 80906

/s/ Stacey Potts
Paralegal

---

[1] Plaintiff left the El Paso County Criminal Justice Center since filing his Complaint. On information and belief, Plaintiff is now at the address given in the certificate of service.

2